```
            IN THE UNITED STATES DISTRICT COURT

         FOR THE EASTERN DISTRICT OF PENNSYLVANIA


MARIE A. SUTTON,                   :      CIVIL ACTION
         Plaintiff                 :
                                   :
     VS.                           :
                                   :
LINDA S. MCMAHON,¹                 :
Commissioner of Social Security,   :
         Defendant                 :      NO. 06-3246
```

## REPORT AND RECOMMENDATION

**LINDA K. CARACAPPA**
**UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Marie Sutton, brought this action under 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's claim for supplemental security income (SSI) under Title XVI of the Social Security Act (Act). The parties have filed cross-motions for summary judgment. For the reasons which follow, it is recommended that summary judgment be granted in favor of the Commissioner.

---

[1] On January 22, 2007, Linda S. McMahon became the Acting Commissioner of Social Security. Pursuant to Fed. R. Civ. P 25(d)(1), Ms. Mahon should, therefore, be substituted for Commissioner Jo Anne B. Barnhart as the defendant in this lawsuit.

1

**BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff is a forty-one (41) year-old female born on September 26, 1965 (Tr. 43). Plaintiff has a high school education, and completed vocational training in horticultural landscaping (Tr. 93). She has past work experience as a cashier, waitress, bank teller, laborer, and machine operator (Tr. 88). Disability is alleged as of June 1, 2004 due to bipolar disorder, agoraphobia, diabetes, kidney disease, and anxiety attacks (Tr. 87).

Plaintiff's application was denied initially, and she then requested a hearing before an Administrative Law Judge (ALJ). A hearing was held on September 23, 2005, at which, plaintiff, represented by counsel, testified, along with a vocational expert (VE) (Tr. 174-196). In a decision dated November 22, 2005, the ALJ determined that the plaintiff has the following severe impairments: "[B]ipolar disorder, personality disorder and anxiety." The ALJ, however, further determined the plaintiff retains the residual functional capacity to perform the "exertional requirements of work at all levels of exertion. She does have some non-exertional limitations which include no detailed instructions and limited contact with the public." The ALJ then concluded that plaintiff is capable of performing her past relevant work as a warehouse worker and a machine operator, and he, thus, found her not to be entitled to benefits (Tr. 17-22).

The ALJ's findings became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on May 18, 2006 (Tr. 3-5).  Presently, plaintiff has appealed that decision to this court.

## **JUDICIAL REVIEW**

The role of this court, on judicial review, is to determine whether the Commissioner's decision is supported by substantial evidence.  42 U.S.C. § 405(g); Pierce v. Underwood, 587 U.S. 552 (1988).  "Substantial evidence" is not "a large or significant amount of evidence but rather such relevant evidence as a reasonable mind might accept to support a conclusion." Id. at 664-65.  "The Court is bound by the ALJ's findings of fact if they are supported by substantial evidence in the record."  Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).

To establish a disability under the Social Security Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period."  Stunkard v. Secretary of Health and Human Services, 841 F.2d 57 (3d Cir. 1988), quoting Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. § 423(d)(1) (1982).  A claimant can establish such a disability in either of two (2) ways: (1) by producing medical evidence that one is disabled per se as a

result of meeting or equaling certain listed impairments set forth in 20 C.F.R. Regulations No. 4, Subpart P, Appendix 1 (1987); see Heckler v. Campbell, 461 U.S. 458 (1987); Stunkard v. Secretary of Health and Human Services, 841 F.2d at 59; Kangas v. Bowen, 823 F.2d at 777; or (2) by demonstrating an impairment of such severity as to be unable to engage in "any kind of substantial gainful work which exists in the national economy." Heckler v. Campbell, 461 U.S. at 461; 42 U.S.C. § 423(d)(2)(A).

This method of proving disability requires that the claimant first show that he/she is unable to return to his/her former work due to a physical or mental impairment. Once a claimant has demonstrated that he/she is unable to perform his/her former work, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he/she is able to perform, taking into consideration the claimant's physical ability, age, education and work experience. See Kangas v. Bowen, supra; Rossi v Califano, 602 F.2d 55, 57 (3d Cir. 1979); 42 U.S.C. § 423(d)(2)(A).

This case was decided under the medical-vocational regulations which require a five-step sequential evaluation of disability claims. See generally, Heckler v. Campbell, supra; Santise v. Schweiker, 676 F.2d 925 (3d Cir. 1982). The sequential evaluation considers in turn current work activity, the severity of impairments, the ability to perform past work and vocational

factors.  20 C.F.R. §§ 404.1520 and 416.920.

In this case, the Commissioner reached the fourth step of the evaluation and determined that plaintiff is capable of performing her past work as a warehouse worker and machine operator.

## **MEDICAL HISTORY**

The relevant evidence in this case consists of medical reports and testimony which are summarized as follows:

Plaintiff was seen on October 16, 2003 at Creative Health Services by Dr. G. Williams.  In her mental status examination, plaintiff's behavior was described as "polite, cooperative, some stress," speech clear, mood depressive, orientation full, memory good, insight and judgment "fairly good," and social judgment good. Diagnosis was bipolar disorder (moderate) (Tr. 104-107).

Plaintiff was given a Clinical Psychological Disability Evaluation on November 15, 2004 by Christos Eleftherios, Ed.D., at the request of the Pennsylvania Bureau of Disability Determination. Plaintiff indicated that she was unable to work due to panic attacks.  As far as treatment, she stated that she sees her family doctor once every three months and was in treatment a few years back at Creative Health Services.  Dr. Eleftherios noted that plaintiff's appearance was disheveled, her affect flat, mood mildly depressed, but her thinking clear, logical, and goal-directed.  He noted that plaintiff had been seen "off and on" at Creative Health,

and wasn't very compliant with treatment. Plaintiff told him that "I didn't pay any attention that they wanted me to go through counseling and stuff." He stated that plaintiff had never really been in any consistent counseling or psychotherapeutic program. Dr. Eleftherios wrote that plaintiff did not appear to have any significant problems with memory or concentration or attention. Her comprehension was adequate and no cognitive difficulties were noted (Tr. 120-124).

Dr. Eleftherios summarized that plaintiff appeared to be somewhat tense, anxious, and mildly depressed. She has mood swings and can become aggressive, but she did not report any other significant difficulties. His diagnostic impression was a history of bipolar disorder and he believed that she also had a borderline personality disorder. He stated further that plaintiff's prognosis was "very guarded" as she had not been compliant with treatment and wasn't motivated to be in treatment. Dr. Eleftherios recommended "outpatient treatment on a consistent basis with a review of her medications." He added that it was "unclear as to how motivated this person is to follow through" (Tr. 124-126).

Dr. Eleftherios also completed an Ability to Do Work-Related Activities form. In the area of ability to remember, and carry out instructions, Dr. Eleftherios opined that plaintiff had no impairment. In the category of ability to respond appropriately to supervision, co-workers, and work pressures in a work setting,

6

he opined that plaintiff had "moderate" limitations (Tr. 127-129).

On November 29, 2004, Christopher King, Psy.D., a non-examining physician, reviewed plaintiff's medical records. He concluded that plaintiff could meet the basis mental demands of competitive work on a sustained basic despite her mental impairments (Tr. 173).

Plaintiff testified at the administrative hearing that she spends most of her day in her bedroom and only comes out to help her children with essential needs such as preparing for school. She further testified that she is unable to leave her apartment without someone driving her even to get to medical appointments (Tr. 180-184).

A vocational expert (VE) also testified at the administrative hearing. The ALJ asked the VE to consider an individual with plaintiff's vocational profile who had no exertional limitations, but had to avoid work which involved detailed instructions and contact with the public. The VE responded that such a person could perform a number of jobs such as an assembler, a finish inspector, and order picker, and including plaintiff's past jobs as a warehouse worker and machine operator. The VE added that such jobs exist in significant numbers in the regional and national economies (Tr. 189-191).

## **DISCUSSION**

The Commissioner's findings must be affirmed if they are

supported by substantial evidence.  42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  The role of this court is to determine whether there is substantial evidence to support the Commissioner's decision.  Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied, 507 U.S. 924, 113 S. Ct. 1294 (1993).

In coming to a decision, it is the ALJ's responsibility to resolve conflicts in the evidence and to determine credibility and the relative weights to be given to the evidence.  Richardson v. Perales, supra.

In this case, the ALJ found that the medical evidence establishes that plaintiff has the "following severe impairments: Bipolar Disorder, Personality Disorder and Anxiety."  The ALJ determined that the plaintiff retains the residual functional capacity to perform the exertional requirements of work at all exertional levels, but is limited to work that requires no detailed instructions and limited contact with the public.  The ALJ concluded that plaintiff's limitations do not preclude her from performing her past jobs as a warehouse worker and machine operator.  Plaintiff was, thus, found not to be entitled to benefits under the Act (Tr. 19-22).  After a review of the record, this court finds that the ALJ's decision is supported by substantial evidence and summary judgment should be granted in favor of the Commissioner.

Plaintiff first argues in her summary judgment motion that the ALJ erred in assessing her residual functional capacity in that he failed to address all of her impairments including restless leg syndrome, gastroesophageal reflux disease, proteinuria, obesity, carpal tunnel syndrome, diabetes, and kidney disease[2]. This claim, however, is baseless since the record is simply devoid of any evidence that any or all of these physical conditions affect her physical ability to work. In addition, in her Disability Report that she was required to complete in applying for benefits, plaintiff listed only "bipolar disorder, agoraphobia, diabetes, possible kidney disease, [and] anxiety attacks," as the conditions that limit her ability to work (Tr. 87).[3]

Plaintiff next asserts that the ALJ improperly evaluated her credibility regarding her limitations. Subjective evidence of disability must be considered in determining if a claimant is disabled under the Act. <u>Smith v. Califano</u>, 637 F.2d 968 (3d Cir. 1981). However, credibility determinations as to a claimant's

---

[2] The record contains some notes indicating that plaintiff has diabetes, but such notes contain no indication that this condition physically limits her in any way (Tr. 132-156). In addition, the only mention in the record about kidney disease is a letter from a Dr. Serio Vaisman stating that plaintiff had not shown up for three appointments for kidney problems (Tr. 149).

[3] Furthermore, other than simply stating in her summary judgment motion that the ALJ failed to discuss these physical conditions, she makes no argument nor cites any medical evidence of record that would support a conclusion that any of these conditions limit her ability to work.

testimony regarding her limitations are for the ALJ to make. <u>Van Horn v. Schweiker</u>, 717 F.2d 871, 873 (3d Cir. 1998). In this matter, the ALJ properly considered plaintiff's subjective complaints and gave explanations for rejecting such complaints.

In rejecting plaintiff's claims of disability due to bipolar disorder, borderline personality disorder, and panic disorder, the ALJ noted in his opinion that plaintiff has had "no hospitalizations due to her mental impairments. The claimant received mental health treatment in the past, but her participation was inconsistent and her compliance with treatment and medication was questionable. She reports a history of panic attacks. However, she can and does leave her house, and is not markedly limited by her alleged mental impairment" (Tr. 21).

The record supports the ALJ's rationale. Plaintiff was given a psychiatric evaluation at Creative Health Service on October 16, 2003 by Dr. G. Williams. It should be noted at this point that plaintiff also asserts that the ALJ ignored a finding of Dr. Williams that plaintiff had a Global Assessment of Functioning (GAF) of 45 which indicates "serious symptoms or any serious impairment in social, occupational, or school functioning.[4] However, the rest of Dr. William's assessment itself does not support a finding that plaintiff had "serious" mental symptoms at

---

[4]<u>Diagnostic & Statistical Manual of Mental Disorders</u> (DSM) (Fourth Edition), American Psychiatric Association at 34.

10

this time.  In his assessment, he diagnosed her with "moderate" bipolar disorder (Tr. 107), and found her polite, cooperative with some stress, with clear speech, good social judgment, and "fairly good" insight and judgment (Tr. 104-119).  Moreover, from the date of this psychiatric evaluation through the date of the ALJ's decision, the record is devoid of any further treatment records and/or evaluations by Dr. Williams[5] and Creative Health Services.

Furthermore, the other evidence in the record supports the ALJ's decision.  Plaintiff underwent a Psychological Disability Evaluation on November 15, 2004 by Dr. Christos Elefterios at the request of social security.  This examination was the only mental health evaluation or visit with a mental health professional other than the few that she had with Creative Health Services as discussed above.  In fact, Dr. Elefterios noted that plaintiff had not been in any consistent counseling or psychotherapeutic program, and that the plaintiff told him that "I didn't pay any attention

---

[5] Plaintiff makes a reference in her motion that Dr. Williams was her treating physician.  "Treating physicians' reports should be accorded great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'"  Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (citing Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir.1987).  However, here, the record reflects that plaintiff attended only two psychiatric evaluations at Creative Health in August and October 2003, and one medication check in October 2003 (Tr. 104-119).  Such visits cannot deem Dr. Williams as a treating physician.  However, even if Dr. Williams were considered plaintiff's treating mental health doctor, as discussed above, his own report does not support disability.

that they [Creative Health] wanted me to go through counseling and stuff" (Tr. 120-122).

Dr. Elefterios determined that plaintiff did not appear to have any significant problems with memory, concentration or attention, and that her comprehension was adequate. He added that no cognitive difficulties were noted (Tr. 120-124). Dr. Eleftherios also completed an Ability To Do Work-related Activities form. In such, he opined that plaintiff has no limitations in her ability to remember, and carry out instructions, and he found her to have only "moderate"[6] limitations in her ability to respond appropriately to supervision, co-workers, and work pressures in a work setting (Tr. 127-129).

It is not enough for the plaintiff to demonstrate the existence of an impairment. It must be established that the impairment results in functional limitations so severe that it precludes the plaintiff from engaging in any substantial gainful activity. Dupkunis v. Celebrezze, 323 F.2d 380 (3d Cir. 1963); Gardner v. Richardson, 383 F. Supp. 2 (E.D. Pa. 1974). Here, the medical evidence indicates that plaintiff does suffer with some mental limitations, but it simply does not support a finding that such disable her from performing her past jobs as a warehouse worker and machine operator.

---

[6]On this form "moderate" is defined as "[There is a moderate limitation in this area, but the individual is still able to function satisfactorily" (Tr. 127).

12

Lastly, plaintiff argues that the ALJ failed to incorporate into his hypothetical questioning of the VE her exertional limitations including carpal tunnel, obesity, diabetes, and restless leg syndrome. An ALJ's hypothetical question to a VE must include all the limitations supported by the record. Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). As discussed earlier, however, the record does not support a finding of any exertional impairment. Thus, since the ALJ's hypothetical accurately reflected plaintiff's limitations that are supported by the record, this assertion is without merit.

In conclusion, the ALJ considered and analyzed all the relevant medical evidence, including subjective testimony, indicated both the evidence relied upon and his rationale in making his determination. Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Accordingly, the Commissioner's motion for summary judgment should be granted.

**RECOMMENDATION**

**AND NOW,** this          day of                    , 2007, **IT IS RESPECTFULLY RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED** and the Commissioner's Motion for Summary Judgment be **GRANTED.**


                                        S/ Linda K Caracappa

                                        _____

                                        **LINDA K. CARACAPPA**
                                        **UNITED STATES MAGISTRATE JUDGE**